**In re ARGUS GROUP 1700, INC., and Arden Phoenix Group 1700, L.P., Debtors/Appellants,**

v.

**Milton STEINMAN, Appellee.**

**In re ARGUS GROUP 1700, INC., and Arden Phoenix Group 1700, L.P., Debtors.**

**Craig A. SPENCER, Robert S. Spencer, and Arden Group, Inc., Appellants,**

v.

**Milton STEINMAN, Appellee.**

**Civil Action Nos. 96–8011, 96–8244, and 96–8618.**

United States District Court, E.D. Pennsylvania.

Feb. 13, 1997.

Edmond M. George, Charles M. Golden, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, for Argus Group 1700, Inc.

Paul R. Rosen, Spector, Gadon & Rosen, P.C., Philadelphia, PA, Henry Siedzikowski, Elliott, Reihner, Siedzikowski, North & Egan, P.C., Blue Bell, PA, Leslie Beth Baskin, Phildelphia, PA, for Craig Spencer, Robert Spencer, and Arden Phoenix Group 1700, L.P.

Gerard P. Egan, Henry F. Siedzikowski, Elliott, Reihner, Siedzikowski, North & Egan, P.C., Blue Bell, PA, for Milton Steinman.

Richard J. Perr, Philadelphia, PA, for Paul R. Rosen, and Spector Gadon & Rosen, P.C.

Frederic J. Baker, Asst. U.S. Trustee, Philadelphia, PA, pro se.

### MEMORANDUM AND ORDER

VANARTSDALEN, Senior District Judge.

Argus Group 1700, Inc., ("Argus") and Arden Phoenix Group 1700, L.P., ("Phoenix") (collectively, "the debtors") appeal (Civ. Nos. 96–8011 & 96–8244) from the bankruptcy court's order dismissing their Chapter 11 bankruptcy cases and remanding to state court a civil action that the debtors removed to federal court on the same day they filed their bankruptcy cases. The bankruptcy court ruled sua sponte, after a hearing, that the debtors filed for bankruptcy "in bad faith," without a legitimate basis for bankruptcy protection and solely to obtain federal-court jurisdiction over a state-court lawsuit in which the debtors and other parties are named as defendants. The bankruptcy court's order will be affirmed.

In addition, Craig Spencer, Robert Spencer, and Arden Group, Inc., appeal (Civ. No. 96–8618) from the bankruptcy court's order only on the remand issue. As noted, the bankruptcy court's remand order will be affirmed, and, in the alternative, Civ. No. 96–8618 will be dismissed for lack of appellate jurisdiction.

### I.

The following facts have been gleaned from the record (see also 206 B.R. 737, 740–746, Bankruptcy Court's October 31, 1996, Opinion). Phoenix, which is a Pennsylvania limited partnership, owns the real property and commercial office building located at 1700 Sansom Street in Philadelphia, Pennsylvania. That building and property constitute Phoenix's only substantial asset. Argus, a Pennsylvania corporation, is the sole general partner of Phoenix; Argus was apparently created solely to act as Phoenix's general partner, and Argus has no other assets. Craig Spencer is the president and sole shareholder of Argus. Milton Steinman ("Steinman") is one of several limited partners of Phoenix; he holds a 22.9% interest in the partnership.

On October 13, 1995, Steinman filed suit in the Court of Common Pleas, Philadelphia County, ("the Steinman Litigation") naming as defendants Phoenix, Argus, Craig Spencer, Robert Spencer (who is a "financial consultant" to the debtors and is Craig Spencer's father), and Arden Group, Inc. ("Arden Group").[1] Steinman set forth eight counts in his amended complaint, all of which arise under state law. Steinman's primary allegations are that the Spencers fraudulently induced Steinman to invest in Phoenix, and that the Spencers and Argus mismanaged and stole money from the Phoenix partnership and breached the Phoenix limited-partnership agreement.[2]

Steinman's complaint was served, and the parties began a contentious discovery process. On February 21, 1996, Judge Eugene Maier of the Court of Common Pleas entered an order directing the Spencers and Arden Group, but not the debtors, to produce a variety of documents within seven days or pay Steinman $1,000 for each day they fail to do so. Judge Maier also issued a rule to show cause against all of the Steinman Litigation defendants, including the debtors, and scheduled a hearing for March 13, 1996, to determine: (1) whether the defendants and

---

1. Arden Group, which is not one of the debtors in this case, is wholly owned by Craig Spencer; it is the management and leasing company for Phoenix and thirteen of Craig Spencer's other real estate projects.

2. Steinman's eight counts are: (1) state law securities fraud against the Spencers, Arden Group, and Argus; (2) fraudulent misrepresentation and concealment against the Spencers, Arden Group, and Argus; (3) negligent misrepresentation against the Spencers, Arden Group, and Argus; (4) breach of fiduciary duties against Craig Spencer and Argus; (5) appointment of a receiver for Phoenix; (6) disgorgement of assets from Arden Group and Craig Spencer; (7) an accounting of corporate records against the debtors and Arden Group; and (8) breach of the limited partnership agreement against Craig Spencer and the debtors.

their counsel should be held in contempt for violating the court's three previous discovery orders; and (2) whether Argus should be removed as general partner of Phoenix and a receiver appointed to manage the affairs of Phoenix. Finally, Judge Maier ordered all defendants, including the debtors, to pay $1,000 to Steinman's counsel for fees and costs incurred in pursuing the motion for sanctions.[3]

On May 7, 1996, the Pennsylvania Superior Court quashed as interlocutory the defendants' appeal from Judge Maier's sanctions order, and it vacated an earlier order that stayed proceedings in the Steinman Litigation pending appeal. Three days later, on May 10, 1996, the debtors filed separate, voluntary Chapter 11 bankruptcy petitions. On the same day, the debtors removed the Steinman Litigation to this court pursuant to 28 U.S.C. § 1452(a), claiming that a determination of the issues in the Steinman Litigation will directly impact on the administration of the bankruptcy estates.[4] On August 12, 1996, Judge Waldman of this court, to whom the removed Steinman Litigation had been assigned, referred the Steinman litigation to the bankruptcy court.

In the debtors' bankruptcy cases, Steinman filed proofs of claim against each of the debtors, and the debtors filed objections to Steinman's claims. See 206 B.R. at 744–745. Steinman later deleted two of his proofs of claim, and, ultimately, his only remaining claim against each of the debtors, jointly and severally, was for $31,025.50. Steinman sought $30,025.50 as the amount the debtors allegedly owe him in attorney's fees and costs pursuant to the Superior Court's May 7, 1996, order, which granted Steinman counsel fees and costs incurred in connection with the defendants' appeal from Judge Maier's

sanctions order, and he sought $1,000 in attorney's fees and costs pursuant to Judge Maier's February 21, 1996, sanctions order.[5] See Appellants' Designation of the Record on Appeal, Tab 14.

In the Steinman Litigation, which was referred to the bankruptcy court as Adversary Proceeding No. 96–1016, Steinman filed a motion to remand the case to state court. By order entered August 6, 1996, 199 B.R. 525, the bankruptcy court scheduled a hearing "to discuss the status of the bankruptcy cases (and in particular the issues raised by the Court in the accompanying Opinion at page 12) and the contested matters and adversary proceedings filed within." In the Opinion accompanying its order, the bankruptcy court informed the debtors of its concern that the bankruptcy cases may have been filed solely as a vehicle to remove the Steinman Litigation to federal court to avoid state-court jurisdiction over the litigation. See 199 B.R. at 530–31, Bankruptcy Court's August 6, 1996, Opinion, pp. 11–12. The bankruptcy court also informed the debtors that they should prepare themselves to establish the bona fides of their bankruptcy cases:

> If there is any point to this bankruptcy proceeding, we fail discern what it is. To the extent there is any bankruptcy purpose for this case, which we intend to question at the status hearing scheduled in our accompanying Order, it seems, by Debtors' counsel's own statement, to revolve around the Steinman Litigation.

199 B.R. at 531, Bankruptcy Court's August 6, 1996, Opinion, pp. 11–12.

On September 9, 1996, the bankruptcy court held the scheduled hearing, and the

---

3. The Steinman Litigation defendants contend that Judge Maier's February 21, 1996, order was issued ex parte.

4. It should be noted that, in state court, all of the Steinman Litigation defendants were represented by the same law firm, Spector Gadon & Rosen, P.C. In the bankruptcy court, that law firm was disqualified from representing both the debtors and nondebtor defendants due to the conflicting interests of the debtors and non-debtors in the bankruptcy proceedings. See 199 B.R. 525, Bankruptcy Court's August 6, 1996, Opinion &

Order (Exhibit 21, Appellant's Record on Appeal). That firm now represents only the non-debtor defendants in the Steinman Litigation. The bankruptcy court's disqualification order is not challenged on appeal.

5. Steinman's amended proof of claim did not include the $1,000 per day sanction Judge Maier imposed on the non-debtor defendants in the Steinman Litigation for failing to comply with Judge Maier's previous discovery orders.

parties presented oral argument on Steinman's remand motion, with the debtors opposing a remand. At the hearing, the court informed the parties that it was considering sua sponte dismissal of the bankruptcy cases, and that it hoped the parties would address the issue of whether the bankruptcy cases serve legitimate bankruptcy purposes. Transcript of September 9, 1996, Hearing, pp. 9, 70–71. The bankruptcy court stated that it intended to issue a rule to show cause why the bankruptcy cases should not be dismissed, and that it would schedule a separate hearing on this issue. The debtors responded to the bankruptcy court's concerns by proceeding, at that hearing, to present evidence regarding the bona fides of their bankruptcy cases. Transcript of September 9, 1996, Hearing, pp. 70–74. The debtors called Craig Spencer to testify at some length regarding his view of the bankruptcy purposes being served. *See id.*, pp. 74–113. The debtors also submitted documentary evidence to support their purported need for bankruptcy reorganization.

By order dated October 31, 1996, the bankruptcy court granted Steinman's motion to remand the Steinman litigation to state court and dismissed the debtors' bankruptcy cases sua sponte. The court remanded the Steinman Litigation pursuant to 28 U.S.C. §§ 1452(b) and 1334(c)(1), finding, *inter alia,* that the debtors filed their bankruptcy cases solely to obtain federal-court jurisdiction over the Steinman litigation. 206 B.R. at 752–753. The bankruptcy court found that the Steinman Litigation, which involves issues of state law only, is essentially a two-party partnership dispute between Steinman and Craig Spencer. *Id.* The court determined that the debtors removed the Steinman litigation to federal court solely because they believed that Steinman's counsel had exercised improper influence over the state trial judge's decisions, and that the debtors' bankruptcy cases lack any legitimate bankruptcy purpose.[6] *Id.* The bankruptcy court dismissed the debtors' bankruptcy cases sua sponte pursuant to 11 U.S.C. § 1112(b) and 11 U.S.C. § 305(a), finding that: the debtors filed their bankruptcy cases solely to obtain federal-court jurisdiction over the Steinman Litigation, the debtors were in financial good health at the time they filed the bankruptcy cases, and there was no valid basis for the bankruptcy filings. 206 B.R. at 752–753.

The debtors have filed two notices of appeal from the bankruptcy court's October 31, 1996, order. This court docketed those appeals separately as Civil Action Nos. 96–8011 and 96–8244. In the notice of appeal docketed as Civ. No. 96–8011, which was timely filed with the bankruptcy court on November 8, 1996,[7] the debtors (*i.e.,* both Argus and Phoenix) express their intention to appeal from both parts of the bankruptcy court's October 31, 1996, order: namely, from the

---

**6.** The debtors continue to assert that the state courts will not treat them fairly. Notably, on March 7, 1996, six days before the debtors were to appear before Judge Maier for the March 13 rule to show cause hearing, Phoenix filed suit in this court under 42 U.S.C. § 1983 against Steinman and others (including various "unnamed" state court judges and their staff), alleging, *inter alia,* that Steinman's counsel improperly used its relationship with Judge Maier to "gain advantage" in the Steinman Litigation. *See Arden Phoenix 1700 v. Steinman, et al.,* Civ. No. 96–1792. In the § 1983 suit, Phoenix seeks, *inter alia,* to enjoin Judge Maier from presiding over the Steinman Litigation. The § 1983 suit was also assigned to Judge Waldman, who referred it, with a then-pending motion to dismiss, to the bankruptcy court on August 21, 1996. The bankruptcy court entered an order on November 6, 1996, recommending that the reference in the § 1983 suit be withdrawn in light of the bankruptcy court's decision to dismiss the debtors'

bankruptcy cases. It appears from this court's docket entries that the reference has not been withdrawn, and the § 1983 suit remains pending before the bankruptcy court as Adversary Proceeding No. 96–1096. I suggested at oral argument that counsel file a motion with Judge Waldman to withdraw the reference.

**7.** A notice of appeal in a bankruptcy case must be filed within 10 days (including weekends and holidays) from the date on which the bankruptcy court's order is entered. *See* Fed. Bankr.Rules 8002(a) and 9006(a). It appears from the bankruptcy court's docket entries that the order appealed, which is dated October 31, 1996, may have been entered on the bankruptcy court docket on November 5, 1996. Whether it was entered on October 31 or November 5, the debtor's notice of appeal was filed within the requisite 10–day period.

dismissal of the bankruptcy cases and from the remand of the Steinman Litigation to state court. The debtors filed a second notice of appeal on November 12, 1996, which was docketed as Civ. No. 96–8244. In the second notice of appeal, which was also timely filed,[8] the debtors again express their intention to appeal from the bankruptcy court's October 31, 1996, order. Unlike their first notice of appeal, however, the debtors limit the scope of the second notice of appeal to the bankruptcy court's decision to remand the Steinman Litigation. It is unclear why the debtors filed a second notice of appeal from the remand decision when that issue was properly appealed to this court with the first notice of appeal. The remand issues the debtors raise in both appeals are identical. In any event, the appeals docketed at both Civ. No. 96–8011 and 96–8244 are properly before this court.[9]

The bankruptcy court docket entries show that on December 2, 1996, the non-debtor defendants to the Steinman Litigation (namely, Craig Spencer, Robert Spencer, and Arden Group) filed a notice of appeal from the bankruptcy court's October 31, 1996. That appeal was docketed as Civ. No. 96–8618. On February 6, 1997, following oral argument before this court on the appeal, counsel for the non-debtor appellants submitted to this court a letter, which has been docketed and filed with the Clerk's office, contending that the notice of appeal was, in fact, timely filed on November 8, 1996. For purposes of deciding this appeal, I will assume the non-debtors' notice of appeal was timely filed, despite the suggestion in the bankruptcy court docket entries that it was untimely filed.

On November 22, 1996, after a hearing, the bankruptcy court denied the debtors' motion pursuant to Bankruptcy Rule 8005 for a stay of the bankruptcy court's October 31, 1996, order pending appeal. On December 23, 1996, after a hearing, I denied the debtors' motion in this court for a stay of the bankruptcy court's order pending appeal. *See* Miscellaneous Action No. 96–280.

## II.

The bankruptcy court had jurisdiction over the debtors' bankruptcy cases pursuant to 28 U.S.C. § 157(b), and jurisdiction over the Steinman Litigation, which was referred to the bankruptcy court as an adversary proceeding, pursuant to 28 U.S.C. § 157(c)(2). This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) (West Supp.1996).

Review of the bankruptcy court's legal determinations is plenary. *See In re Brown,* 951 F.2d 564, 567 (3d Cir.1991). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. Bankr.R. 8013. Under the clearly erroneous standard, this court accepts the bankruptcy court's factual determinations unless they are either "completely devoid of minimum evidentiary support displaying some hue of credibility or bear[ ] no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.,* 57 F.3d 1215, 1223 (3d Cir.1995) (citation omitted). Mixed questions of law and fact "must be divided into their respective components and the appropriate test applied." *In re Brown,* 951 F.2d at 567.

---

8. If the bankruptcy court's order was entered on November 5, 1996, then the notice of appeal was clearly timely. If it was entered on October 31, 1996, then the tenth day following entry of the order was Sunday, November 10, 1996. Under the Bankruptcy Rules, weekends and holidays (including Monday, November 11, 1996, which was Veterans Day), are excluded from the computation of time when they are the last day for filing. *See* Fed. Bankr.R. 9006(a). Thus, if the bankruptcy court's order was entered on October 31, the debtors second notice of appeal was timely filed on Tuesday, November 12, 1996.

9. The debtors have filed an appellate brief in Civ. No. 96–8011, but they have not filed a separate brief in Civ. No. 96–8244. The debtors apparently believe that these appeals have been consolidated, but no order has been entered consolidating these appeals, and the Clerk of Court issued separate briefing schedules for each appeal. I am satisfied that the debtors' failure to file a brief in Civ. No. 96–8244 has not prejudiced the appellees' ability to respond to the issues presented by the debtors, as the overlapping issues in the two appeals are substantively identical. Accordingly, I will not dismiss the appeal at Civ. No. 96–8244 for failure to prosecute.

## III.

**a.** *The debtors' appeals: Civil Action Nos. 96–8011 and 96–8244*

**(i) Sua Sponte Dismissal of the Bankruptcy Cases**

▮ The bankruptcy court relied on 11 U.S.C. § 1112(b) and, in the alternative, 11 U.S.C. § 305(a) to dismiss the debtors' bankruptcy cases sua sponte. The debtors' first contention on appeal is that § 1112(b) does not authorize a bankruptcy court to dismiss a Chapter 11 case sua sponte.[10]

> Section 1112(b) provides, in relevant part: [O]n request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause[.]

11 U.S.C. § 1112(b) (West Supp.1996). Although the express terms of the statute do not authorize a sua sponte dismissal, I agree with the view expressed by several courts that, in light of the 1986 amendments to 11 U.S.C. § 105(a),[11] a bankruptcy court may, sua sponte, rely on § 1112(b) to dismiss a Chapter 11 case "for cause." *See In re Finney*, 992 F.2d 43, 45 (4th Cir.1993) ("A bankruptcy court may act under § 1112(b) on the motion of a party in interest or *sua sponte* as 'necessary and appropriate' under § 105(a)."); *In re 183 Lorraine Street Associates*, 198 B.R. 16, 32 (E.D.N.Y.1996); *Pleasant Pointe Apartments, Ltd. v. Kentucky Housing Corp.*, 139 B.R. 828, 831

(W.D.Ken.1992); *In re Daily Corp.*, 72 B.R. 489, 492 (Bankr.E.D.Pa.1987); *see also* 5 Collier on Bankruptcy ¶ 1112.03[4] (15th ed. 1996); *cf. Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir.1997) ("While no party sought [to reopen the bankruptcy case pursuant to § 1112(b)(8) ], 11 U.S.C. § 105(a) empowered the bankruptcy court to reopen the case on its own motion.").

The debtors rely on three cases to support their contention that a bankruptcy court lacks sua sponte dismissal power under § 1112(b): *In re Moog*, 774 F.2d 1073 (11th Cir.1985); *In re Gusam Restaurant Corp.*, 737 F.2d 274 (2d Cir.1984); and *In re Warner*, 30 B.R. 528 (9th Cir. BAP 1983). *See* Appellants' Brief, p. 19. Those cases were decided prior to the 1986 amendments to § 105(a), and thus, in my view, they are inapposite. *See, e.g., In re Klenosky*, 130 B.R. 132, 134–135 (E.D.N.Y.1991) ("[T]he continued validity of *In re Gusam Restaurant* is called into question by the 1986 amendments to § 105(a) of the Code."); *cf. Matter of Hammers*, 988 F.2d 32, 35 n. 8 (5th Cir.1993). Therefore, I reject the debtors' contention that the bankruptcy court lacked the power under § 1112(b) to dismiss their bankruptcy cases sua sponte.

▮ The debtors contend (on the assumption that the bankruptcy court had the authority to rule sua sponte) that they were not provided adequate notice and an opportunity to respond to the bankruptcy court's sua sponte action. The record clearly establishes the contrary. The bankruptcy court's August 6, 1996, Opinion and Order, together with the statements the court made to the

---

**10.** The debtors do not expressly challenge, in their brief or in their statement of the issues on appeal, the bankruptcy court's decision to dismiss their bankruptcy cases pursuant to § 305(a). Accordingly, this court need not review that portion of the bankruptcy court's decision, and the issue is waived. *See In re Freeman*, 124 B.R. 840 (N.D.Ala.1991), *aff'd*, 956 F.2d 252, 255 (11th Cir.1992) (an issue that is neither listed in appellants' designation of the record on appeal nor raised in their brief to the district court is waived and need not be addressed by the district court when the issue is "not inferable" from the issues designated). An independent review of the bankruptcy court's analysis convinces me that dismissal under § 305(a) was clearly appropriate. Absent the remanded Stein-

man Litigation, there was no reason for the debtors' bankruptcy cases to proceed.

**11.** Section 105(a), as amended in 1986, provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude a court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

debtors at the September 9, 1996, hearing, provided the debtors with more than adequate notice of the possible sua sponte dismissal. In addition, the bankruptcy court offered the debtors the choice of either being heard at the September 9 hearing on the possible sua sponte dismissal or waiting to respond at a separate rule to show cause hearing. Transcript of September 9, 1996, Hearing, pp. 70–71. The record reflects that the bankruptcy court was reluctant to dismiss the debtors' cases without issuing a formal rule to show cause and holding an additional hearing. *Id.*, at p. 72. The debtors assured the bankruptcy court that they were prepared to present evidence at the September 9 hearing. They presented Craig Spencer's testimony and submitted documentary evidence on the issue of whether the bankruptcy cases advanced a legitimate bankruptcy purpose. Thus, it is clear that the bankruptcy court provided the debtors with adequate notice and an opportunity to respond, and that the debtors actively participated in the proceedings, fully aware that the bankruptcy court might dismiss their bankruptcy cases sua sponte.[12]

I reject the debtors contention that the bankruptcy court did not adequately express its intention to dismiss the cases, and that the bankruptcy court merely sought "information" regarding the purposes of, and justifications for, the bankruptcy cases. The record is sufficiently clear on this point, and there could have been no reasonable misunderstanding as to the purposes to be served by the September 9 hearing.

■ The debtors next contend that the bankruptcy court committed reversible error by failing to afford their secured creditor notice of the court's sua sponte dismissal. Specifically, the debtors contend that Bank-

ruptcy Rule 2002(f) required the bankruptcy court to give Carnegie Bank, a secured lender with a mortgage on Phoenix's property, notice of the sua sponte dismissal. This argument is without merit. Carnegie Bank is not a party to this appeal, and the debtors lack standing to argue that Carnegie Bank was not afforded notice of the bankruptcy court's sua sponte action. Furthermore, at a hearing before this court to consider the debtors' motion for a stay pending appeal, Carnegie Bank's counsel addressed the court but expressed no interest in participating in this appeal.[13] It can be inferred that Carnegie Bank has neither an objection to the notice, if any, the bankruptcy court provided it nor an objection to the bankruptcy court's dismissal of the debtors' bankruptcy cases. The record also reflects that, at a hearing before the bankruptcy court on the debtors' motion for a stay pending appeal, the bankruptcy court informed Carnegie Bank that it could object to the court's dismissal of the bankruptcy cases by filing a motion for reconsideration of the court's October 31, 1996, order. Carnegie Bank filed neither a motion for reconsideration nor any other pleading with the bankruptcy court or with this court.

■ The debtors' final contention is that bankruptcy court erred in ruling that the bankruptcy cases were filed in "bad faith" because § 1112(b) does not require a "good faith" filing. Congress set forth as part of § 1112(b) a list of 10 factors that justify dismissal of a Chapter 11 petition "for cause." *See* 11 U.S.C. § 1112(b)(1)-(10). The Third Circuit Court of Appeals has ruled that this list is "nonexhaustive," and "courts should 'consider other factors as they arise.' " *In re Brown*, 951 F.2d at 572 (citation omitted). One of the other factors to be considered is whether the bankruptcy cases were filed in "bad faith," and I agree with the view

---

**12.** Notably, Steinman's counsel was somewhat reluctant to have the debtors present evidence at the September 9 hearing on the issue of the bankruptcy purposes being served, as Steinman's counsel "did not come prepared to cross-examine Mr. Spencer on whatever he is prepared to say." Transcript of September 9, 1996, Hearing, p. 71. The debtors' counsel stated in response that "all of the papers of the Steinman case have always, always, always alleged that this is a bad faith filing. And so, you know, I don't know what they had to prepare themselves." *Id.*, at p.

**72.** The debtors' counsel was clearly prepared to address the sua sponte dismissal at the September 9 hearing, and any right the debtors might have had to more formal notice was, therefore, waived.

**13.** Carnegie Bank's representative merely made a statement regarding actions the bank might take against the debtors if the bankruptcy proceedings are dismissed.

that evidence of bad faith in filing, or evidence of a lack of good faith, establishes the requisite "cause" for dismissal under § 1112(b). *See In re Trident Associates Ltd. Partnership,* 52 F.3d 127, 131 (6th Cir.) ("[D]ebtor bad faith can constitute cause under [§ 1112(b) ]"), *cert. denied,* —— U.S. ——, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995); *In re Marsch,* 36 F.3d 825, 828 (9th Cir.1994) ("[C]ourts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal."); *In re SB Properties, Inc.,* 185 B.R. 198, 204 (E.D.Pa.1995) ("[A] Chapter 11 case can be dismissed for 'cause' under § 1112(b) if filed in bad faith."); *In re Boynton,* 184 B.R. 580 (Bankr.S.D.Cal.1995); *Matter of Mitan,* 168 B.R. 326 (Bankr.E.D.Mich.1994); *In re Clinton Fields, Inc.,* 168 B.R. 265 (Bankr. M.D.Ga.1994).

Here, the bankruptcy court relied on several factual determinations to reach the conclusion that the debtors filed the bankruptcy cases not because of financial difficulties, but rather as an impermissible scheme to obtain federal-court jurisdiction over the pending Steinman Litigation. Among the reasons cited by the bankruptcy court were that: (1) the debtors filed for bankruptcy only three days after it became apparent that they would have to answer to the state trial court's sanctions order and appear at a rule to show cause hearing to explain why a receiver should not be appointed for Phoenix; (2) the debtors contended that the state trial court failed to treat them fairly and impartially and that Steinman would continue to use his "influence" to gain an advantage in the Steinman Litigation; (3) Craig Spencer testified that the debtors "were running out of funds rapidly because of the [Steinman] litigation" (Transcript of September 9, 1996,

Hearing, p. 86), but, after they filed the bankruptcy petitions, the debtors did not take advantage of the Bankruptcy Code's automatic stay provision to delay the expenses being generated in defending against the Steinman Litigation; (4) the debtors removed the Steinman Litigation to federal court on the same day they filed their bankruptcy cases; (5) the debtors were in sound financial condition when they filed their bankruptcy cases; (6) the debtors have only one secured creditor and very little unsecured debt;[14] (7) the debtors were current on their mortgage obligations when they filed their bankruptcy cases; (8) the debtors were operating on a "better than break even basis" when they filed their bankruptcy cases; (9) the debtors' financial obligations were being incurred and paid in the ordinary course of business when they filed their bankruptcy cases; and (10) while Phoenix's financial condition might be hurt by the impending loss of one the building's tenants, Craig Spencer testified that Phoenix will be able to cover its debt service at least through March of 1997.

I find that the bankruptcy court's factual determinations are supported by the record and fully support the conclusion that the debtors filed the bankruptcy cases in bad faith. While there is no precise list of factors that leads conclusively to a finding of "bad faith" under § 1112(b), *see In re SB Properties, Inc.,* 185 B.R. at 204–05 & n. 5, I am satisfied, based on the totality of factual circumstances established in this case, that the debtors' bankruptcy petitions were filed in a "bad faith" effort to fabricate federal-court jurisdiction for the Steinman Litigation.[15] *Cf. In re Trident Associates,* 52 F.3d at 132 (affirming dismissal of Chapter 11 case as filed in bad faith where bankruptcy court

---

**14.** The only substantial unsecured debt is a claim for approximately $112,000 in legal fees by the law firm of Spector Gadon & Rosen, P.C.

**15.** Steinman is a citizen of Florida while the debtors and the non-debtor Steinman Litigation defendants are citizens of Pennsylvania, but the Steinman Litigation defendants would not be permitted to remove the case based on diversity of citizenship. *See* 28 U.S.C. § 1441(b); *Brooks v. District of Columbia,* 819 F.Supp. 67, 68 (D.D.C.1993) ("[A] Defendant may not remove a case to federal court on the basis of diversity

when the suit was filed in the Defendant's home state."). Nor would removal be permitted based on federal-question jurisdiction, as the Steinman Litigation raises only state-law issues. Of course, if the debtors' bankruptcy cases had served some legitimate bankruptcy purpose, the mere fact that one of the reasons they filed for bankruptcy was to remove the Steinman Litigation to federal court would not alone be sufficient to preclude a federal court from exercising jurisdiction over the Steinman Litigation.

found, *inter alia*, that the debtor filed bankruptcy cases in an attempt to avoid foreclosure sale in state court).

The debtors have made no secret of the fact that they wish to defend against the Steinman Litigation in federal court because they contend that the state courts have not, and will not, treat them fairly and impartially. Even if the debtors' fear of unfair treatment is well-founded, it provides no justification for the decision to file bankruptcy petitions when they are in sound financial condition. In addition, the state trial judge's alleged errors and/or improprieties are properly challenged, in the first instance, in the state appellate courts, not in federal district court.[16] Notably, the bankruptcy court had the opportunity to observe Craig Spencer's testimony on the issue of the bankruptcy purpose served by these cases, and the bankruptcy court concluded, despite Craig Spencer's testimony to the contrary, that the debtors engaged in forum shopping and that the bankruptcy cases are without a legitimate bankruptcy purpose. The bankruptcy court's opportunity to judge Craig Spencer's credibility is entitled to deference. *See* Fed. Bankr.R. 8013.

In summary, § 1112(b) permits a bankruptcy court to dismiss a case sua sponte as filed in bad faith. The debtors were provided notice and an adequate opportunity to respond, and did respond by presenting evidence in opposition to the bankruptcy court's decision to dismiss their cases sua sponte. The debtors lack standing to contend that Carnegie Bank failed to receive adequate notice of the sua sponte dismissal, and, in any event, Carnegie Bank was afforded an adequate opportunity to respond to the district court's sua sponte dismissal. The bankruptcy court's determination that the debtors filed their bankruptcy cases in bad faith is supported by the record.

### (ii) Remand of the Steinman Litigation

■ The bankruptcy court remanded the Steinman Litigation to state court pursuant to 28 U.S.C. §§ 1452(b)[17] and 1334(c)(1).[18] I agree with the bankruptcy court's analysis of the remand issue. *See* 206 B.R. at 746–752. The Steinman Litigation belongs in state court, particularly given that: (1) the bankruptcy cases have been dismissed; (2) the debtors filed the bankruptcy cases in bad faith to obtain federal-court jurisdiction over the Steinman Litigation, which raises issues of state law only; (3) the Steinman Litigation is, in essence, a two-party partnership dispute between Steinman and Craig Spencer; (4) the parties conducted a significant amount of discovery in state court, and the case should soon be ready for trial in state court;[19] (5) the state court should be able to resolve the Steinman Litigation just as quickly, if not more quickly, than a federal court; (6) the state trial court has entered a substantial sanctions order, and the state court is in the best position to adjudicate that sanctions order; (7) the state appellate court has entered an order awarding attorney's fees and costs to Steinman, directing that a hearing be held to determine the amount to be awarded, and the state trial court is in the best position to conduct that hearing; (8) the state court is a convenient forum for the parties; (9) the state court is familiar with these litigants and, more importantly, familiar with the bitterly contested discovery issues in this case; and (10) the interests of

---

16. Insofar as the state trial judge allegedly violated Phoenix's federal constitutional rights, such claims might possibly be appropriately considered by the district court in the context of Phoenix's pending § 1983 action.

17. Section 1452(b) provides that the court to which a civil action has been removed "may remand such claim or cause of action on any equitable ground."

18. Section 1334(c)(1) provides:
Nothing in this section prevents a district court in the interest of justice, or in the interest of

comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1) (West Supp.1996).

19. Thirteen depositions were taken before the case was removed to federal court. *See* Transcript of September 9, 1996, Hearing, p. 16. Discovery was to be completed in September, 1996, and the case was to be "trial ready" in January, 1997.

comity are, in my view, best served by a remand.

■ I have considered the debtors' objections to the bankruptcy court's decision to remand, and I find that their objections are without merit. In particular, there is no merit to the debtors' contention that the Steinman Litigation is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2). *See In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir.1996) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (citation and quotation marks omitted). The debtors filed for bankruptcy without a legitimate bankruptcy purpose to obtain federal-court jurisdiction over the Steinman Litigation, and the bankruptcy court need not administer the debtors' bankruptcy estates because the debtors are in financial good health; thus, the Steinman Litigation remains, in effect, what it was before it was improperly removed to federal court: a state-court lawsuit raising only state-law issues, in which two solvent individuals, two solvent corporations, and a solvent limited partnership are named as defendants. Finally, Steinman's proofs of claim, which were filed in the debtors' bankruptcy cases, would have been "core proceedings," but only if the debtors' bankruptcy cases had served a legitimate bankruptcy purpose. The filing a proof of claim does not validate the filing of a bankruptcy proceeding that serves no legitimate bankruptcy purpose.

### b. *The non-debtors' appeal: Civil Action No. 96–8618*

The non-debtors defendants to the Steinman Litigation (Craig Spencer, Robert Spencer, and Arden Group) also appeal from the bankruptcy court's October 31, 1996, and that appeal has been docketed as Civ. No. 96–8618. I will assume for the purpose of this Opinion that the notice of appeal was timely filed on November 8, 1996, as counsel argues in his letter to this court dated February 6, 1997. On the merits, the issues raised by the non-debtor appellants in opposition to the bankruptcy court's remand or-

der are substantively identical to those raised by the debtors' appeals. Accordingly, the non-debtors' appeal lacks merit for the reasons set forth *supra*, at part III(a)(ii).

It should be noted that, according to the bankruptcy court's docket entries, the non-debtors' notice of appeal was filed on December 2, 1996. It is unclear why there is a discrepancy between the date the notice of appeal was docketed in the bankruptcy court and the date appellants claim it was filed. While no party has raised a jurisdictional objection to the timeliness of the non-debtors' appeal, I will consider, in light of the bankruptcy court's docket entry, whether the notice of appeal was untimely filed. *See de la Fuente v. Central Elec. Cooperative, Inc.*, 703 F.2d 63, 64 n. 1 (3d Cir.1983) ("Notwithstanding appellee's failure to challenge the timeliness of this appeal, the jurisdictional nature of the issue obligates us to address it sua sponte.").

■ A notice of appeal in a bankruptcy case must be filed within 10 days (including weekends and holidays) from the date on which the bankruptcy court's order was entered. *See* Fed. Bankr.Rules 8002(a) and 9006(a). This court lacks jurisdiction to review a bankruptcy court order if the notice of appeal was filed outside of the time prescribed by the Bankruptcy Rules. *See Whitemere Dev. Corp. v. Township of Cherry Hill*, 786 F.2d 185, 187 (3d Cir.1986). According to the bankruptcy court's docket entries, the notice of appeal in Civ. No. 96–8618 was filed on December 2, 1996, which is more than 10 days after October 31, 1996. In addition, the notice of appeal was filed more than 10 days after the debtors timely filed their second (albeit redundant) notice of appeal on November 12, 1996. *See* Fed. Bankr.R. 8002(a) ("If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed[.]"). The debtors' motion in the bankruptcy court for a stay pending appeal, which the non-debtors apparently did not join, did not toll the time to file a notice of appeal to this court. *See* Fed. Bankr.R. 8002(b) (enumerating motions that toll time to appeal; a motion pursuant to Bankr. Rule 8005 for a

stay pending appeal is not one of the enumerated motions). Accordingly, as an alternative disposition, Civil Action No. 96–8618 will be dismissed for lack of appellate jurisdiction.

 Notably, the non-debtor appellants are under the mistaken impression that the three related appeals addressed in this Opinion have been substantively consolidated. While these appeals are related in that there are common issues to be decided as well as common parties, this Court has not entered an order consolidating these appeals. The appellants in all three of these cases have simply assumed that these appeals have been consolidated, but cases are consolidated only by court order. *See* Fed.R.Civ.P. 42(a). Perhaps due to their mistaken assumption that these appeals have been consolidated, the appellants in Civ. No. 96–8618 have failed to file an appellate brief, and instead have proceeded on this appeal by filing only a reply brief in Civ. No. 96–8011, to respond to the brief filed by Steinman in Civ. Nos. 96–8011 and 96–8244. An appellant may not proceed on a bankruptcy appeal by filing only a reply brief in response to a brief filed in a related, but unconsolidated, case.

In addition to challenging the remand order, the appellants in Civ. No. 96–8618 have also contended, in their reply brief and at oral argument, that the bankruptcy court erred in dismissing the bankruptcy cases as filed in bad faith. The non-debtors were not parties to the bankruptcy cases and they lack standing on appeal to challenge the bankruptcy court's dismissal of the bankruptcy cases. Notably, when the Steinman Litigation was in state court, the non-debtors' counsel represented all of the defendants, *i.e.*, both the debtors and non-debtors, but the bankruptcy court disqualified that law firm from continuing in that capacity after the debtors filed for bankruptcy (*see* footnote 4, *supra* ). The debtors owe the nondebtors' counsel's law firm a substantial sum of money in legal fees (*see* footnote 14, *supra* ), and the non-debtors' counsel is currently one of the debtors' unsecured creditors. While the non-debtors' counsel perhaps would like to challenge the bankruptcy court's decision to dismiss the bankruptcy cases because he

views that decision as not in his financial best interest, counsel's client lacks standing to challenge dismissal of the bankruptcy cases and counsel's client never filed a notice of appeal from the bankruptcy court's decision to dismiss the bankruptcy cases.

Moreover, the non-debtor appellants' "Statement of Additional Facts" in their reply brief seeks to introduce "facts" that were not part of the record in the bankruptcy proceedings, and those facts will not be considered. Specifically, the nondebtors attempt to introduce in this proceeding some of the allegations that have been made in the § 1983 action against Steinman and others, as part of an effort "to explain the fear that impartial justice in the state courts will not be administered if the dismissal is upheld." Appellants' Reply Brief, p. 3. The factual allegations in the § 1983 suit, however, are not at issue on this appeal.

**IV.**

In Civil Action Nos. 96–8011 and 96–8244, the bankruptcy court's order remanding the Steinman Litigation to state court and dismissing the debtors' bankruptcy cases as filed in bad faith will be affirmed. In Civil Action No. 96–8618, the bankruptcy court's order remanding the Steinman Litigation to state court will be affirmed. As an alternative holding, Civil Action No. 96–8618 will be dismissed for lack of appellate jurisdiction.