**In re Donald Furman FOX, Debtor.**

**Bankruptcy No. 98–20105–11.**

United States Bankruptcy Court,
D. Kansas,
Topeka Division.

March 5, 1999.

Carl R. Clark, Lentz & Clark, P.A., Overland Park, KS, for Debtor.

Janice Miller Karlin, Office of United States Attorney, Kansas City, KS, for IRS.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court on the Motion of United Phosphorus Ltd. to Convert This Proceeding to a Liquidation Under Chapter 7, or, Alternatively, to Dismiss Bankruptcy, United Phosphorus Ltd.'s Motion For Relief From Automatic Stay to Compel Debtor to Turn Over Property Held in Trust; and Debtor's Motion to Approve Compromise, Pursuant to Bankruptcy Rule 9019, With Phyllis Fox. An evidentiary hearing was held on these motions on August 20 and 21, 1998. Upon the subsequent filing of post-trial briefs, the Court took the matter under advisement.

### JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (G) and (O).

### FINDINGS OF FACT

On October 22, 1997, after a two and one-half week trial in two consolidated actions styled *United Phosphorus Ltd. v. Midland Fumigant, Inc.*, Case No. 91–2133–GTV, and *United Phosphorus. Ltd. and Inventa Corporation v. Midland Fumigant, Inc., Donald F. Fox. Phos–Fume Chemical Co., and Kaw Valley, Inc.*, Case No. 95–2267–GTV, a jury returned a verdict in favor of United Phosphorus Ltd. ("United") against Midland Fumigant, Inc. ("Midland") in the amount of $761,866 on claims of trademark infringement, fraudulent trademark registration, and unfair competition, and against Donald Fox ("Debtor") in the amount of $1,314,063 on a claim of fraud. The District Court entered a judgment for punitive damages against Debtor in the amount of $653,217, ordered the piercing of Midland's corporate veil with respect to Debtor, and ordered that a constructive trust be imposed on the assets of Midland and Debtor in art amount equivalent to the August 1992 Fox stock transfer and 1996 Midland distribution, with such trust to remain in effect until United's judgment is satisfied. The District Court's December 1, 1997 Memorandum and Order states in relevant part:

As the court noted above, Fox intentionally concealed his misconduct over several years. He filed fraudulent registrations with the Patent and Trademark Office, deliberately sold inferior aluminum phosphide as Quick–Phos, provided erroneous deposition testimony, falsified multiple invoices, and submitted fraudulent information to both plaintiffs and the court. Further, his trial testimony was hardly the hallmark of truthfulness.

. . . .

Having determined that there are no mitigating factors militating against a punitive damage award, the court now must determine how large an award is necessary to deter the defendant from engaging in similar conduct in the future.... The court must calibrate such an award to defendant's financial condition. The tax returns for Fox and his companies show sizable adjusted gross income. For the years 1991–1995, Fox's annual income averaged close to $500,-000 while Midland's annual gross profits averaged almost $650,000.... Under the statutory cap, punitive damages may not exceed defendant's highest annual gross income for any one of the five years preceding the conduct for which

damages have been assessed, unless such an award would be "clearly inadequate." ... This figure translates to $653,217, Fox's 1993 adjusted gross income.... The court believes that a $653,217 award will punish Fox adequately without undermining his financial solvency or that of his companies.

. . . .

... Fox's accountant, J. Sanford Bushman, also testified that Fox and his companies have sufficient resources to satisfy the judgment in this case.

. . . .

... Finally, Vianello demonstrated that Midland made no effort to record properly many of the stock transfers and other financial transactions involving Donald Fox's family and his various corporate entities. These irregularities continued from 1989 through 1992.

. . . .

There is abundant evidence that the Fox family not only commingled the funds of its corporate holdings, but also used the corporate assets for personal expenditures.... Fox haphazardly transferred funds between his corporate holdings and allowed corporate assets to be used for the personal expenditures of his family members.... Midland's corporate veil, therefore, is pierced only with respect to Donald Fox.

. . . .

... [P]laintiffs allege that Fox transferred half of his Midland stock to his children on August 1, 1992 and that Midland made an unexplained $100,000 "distribution" to Fox's children in 1996.

. . . .

The court cannot impose a constructive trust on the specific transactions described above because the transferees—Fox's children—are not parties to this suit. The court has no jurisdiction over those individuals. However, the court may impose a constructive trust on the remaining assets of Midland and Fox in an amount equivalent to the August 1992 Fox stock transfer and 1996 Midland distribution. This trust shall remain in effect until plaintiffs' judgment has been satisfied.

In an order dated December 23, 1997, the District Court denied Debtor and Midland's motion for a stay of further proceedings, and found that a waiver of the bond requirement set forth in D.Kan.R. 62.2 was not warranted. In December 1997, Midland posted a supersedeas bond in the amount of $953,000 to stay enforcement of the judgment against it pending appeal. The District Court entered an Order Approving Supersedeas Bond and Granting Stay with regard to Midland. Debtor did not post a supersedeas bond to stay enforcement of the judgment against him individually. United began efforts to collect on its judgment.

On January 12, 1998, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor is a debtor in possession within the meaning of 11 U.S.C. §§ 1107 and 1108. After entry of the judgment in the District Court case, Debtor filed certain post-trial motions seeking alterations or changes to the judgment entered. United also filed a post-trial motion seeking an award of attorney fees against Debtor. Debtor has asserted that if he is unsuccessful in eliminating the judgment by his post-trial motions, he intends to appeal the judgment. On April 2, 1998, this Court entered an Order Granting Limited Relief From Automatic Stay Applicable to Debtor and United Phosphorus, Ltd., allowing the parties to seek rulings on the post-trial motions.

On July 8, 1998, the District Court entered its Memorandum and Order on Debtor's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial. The District Court reduced the compensatory damage award against Debtor from $1,314,063 to $67,694.03. Thus, the District Court's July 22, 1998 Nunc Pro Tunc Judgment in a Civil Case provides that United has a judgment against Midland in the amount of $761,866 and against Debtor in the amount of $720,-911.03 for a total of $1,482,777.03. On

August 28, 1998, the District Court issued its Memorandum and Order granting United's request for attorney fees and costs to the extent of $308,228.60 in attorney fees and $4,904.67 in costs, for a total of $313,-133.27. Debtor filed a motion to reconsider this ruling, which is currently under advisement by the District Court.

Prior to filing bankruptcy, Debtor claims he moved from his residence to a trailer he had placed on a 343–acre tract owned jointly by Debtor and his wife, Phyllis Fox. Debtor expended hundreds of thousands of dollars to improve this 343 acres, including constructing a dam creating a 40–acre lake. In November of 1997, Debtor transferred his one-half interest in 183 acres of the tract to Phyllis Fox in exchange for $7,000 and her one-half interest in a piece of property in Leavenworth, Kansas, known as the Moats Building. Debtor has filed a motion to approve a compromise with his wife which contemplates payment of an additional $15,500 by Phyllis Fox. United has objected to the compromise, arguing that it still falls short of providing the estate with equitable value for the property transferred. Debtor is claiming a homestead exemption on the 160–acre tract on which the trailer and the lake are located. United and the United States Trustee have each filed an objection to the Debtor's claimed homestead exemption. These objections, along with Debtor's disclosure statement, are set for hearing before this Court on April 16, 1999.

## CONCLUSIONS OF LAW
*Motion to Dismiss or Convert*

United's motion to dismiss or convert is based on two separate grounds—(1) that

filing a bankruptcy as a substitute for posting an appeal bond is bad faith *per se,* and (2) that an examination of the circumstances surrounding the filing of Debtor's petition reveals his intent to use the Bankruptcy Code to frustrate United's efforts to enforce its rights.

Pursuant to 11 U.S.C. § 1112(b), the Court may, at the request of any party in interest, convert a case under Chapter 11 to one under Chapter 7 or dismiss the case entirely, whichever is in the best interests of the creditors. Section 1112(b) provides that conversion or dismissal must be for "cause," and contains a nonexclusive list of situations that constitute cause. In addition to the grounds listed, courts have allowed conversion or dismissal when the debtor's petition has not been filed in good faith.[1]

 As a general rule, the movant bears the burden of proving by a preponderance of the evidence that cause exists for dismissal of a debtor's bankruptcy case.[2] However, when lack of good faith is raised as a basis for dismissal for cause, the debtor bears the burden of proving that the filing was made in good faith.[3]

United argues that Debtor's bankruptcy was filed in bad faith because it was filed as a substitute for posting an appeal bond. Courts have been split on the issue of whether a bankruptcy filing is in bad faith because it was done to circumvent the statutory requirement of posting a supersedeas bond.[4] Recognizing such a split[5], the court in *In re Davis,* held that:

> One primary characteristic of those cases not finding bad faith is that the

---

1. *In re Winslow,* 123 B.R. 641, 643 (D.Colo. 1991) (citations omitted), *aff'd,* 949 F.2d 401 (10th Cir.1991).

2. *In re Woodbrook Assocs.,* 19 F.3d 312, 317 (7th Cir.1994) (citations omitted).

3. *Stage I Land Co. v. United States,* 71 B.R. 225, 229 (D.Minn.1986) (citations omitted).

4. *See In re Davis,* 93 B.R. 501, 503 (Bankr. S.D.Tex.1987).

5. Those courts holding that such litigation tactics do not constitute bad faith include: *In re Corey,* 46 B.R. 31 (Bankr.D.Hawai'i 1984); *In re McLaury,* 25 B.R. 30 (Bankr.N.D.Tex. 1982); *In re Alton Telegraph Printing Co.,* 14 B.R. 238 (Bankr.S.D.Ill.1981). Those courts considering such tactics demonstrative of bad faith in the filing include: *In re Karum Group, Inc.,* 66 B.R. 436 (Bankr.W.D.Wash.1986); *In re Smith,* 58 B.R. 448 (Bankr.W.D.Ky.1986);

judgment together with the debtors' other liabilities substantially exceeded the assets. Another characteristic included the cooperativeness of the debtors in providing information to assist the court and creditors in expeditiously handling the cases. Those courts also found that the debtors had been forced into bankruptcy to avoid a forced sale and liquidation of its assets.[6]

Also recognizing the split of authority, the court in *In re Boynton*, noted that:

> The cases granting dismissal on bad faith grounds, with the exception of *Karum*, dealt with smaller judgments where the debtor had the ability to satisfy the judgment without losing the ability to stay in business. The cases denying the motion to dismiss typically involved larger judgments that would render the debtor unable to continue its business and allowed the judgment creditor only a partial recovery.[7]

■ This Court declines to adopt a *per se* rule that filing a bankruptcy as a substitute for posting an appeal bond always constitutes bad faith. The Court agrees with those cases that look to the circumstances of the case, including whether or not the debtor could afford to post such a bond. The focus of this inquiry should be on whether the debtor had the ability to post the bond without losing the ability to stay in business.[8]

■ United did not rebut Debtor's testimony that he could not obtain a supersedeas bond. United merely points out that the District Court, in determining the amount of punitive damages to award, found that "[t]he court believes that a $653,217 award will punish Fox adequately without undermining his financial solvency or that of his companies." United also points out that the District Court found that "Fox's accountant, J. Sanford Bushman, also testified that Fox and his companies have sufficient resources to satisfy the judgment in this case." Although this Court could give collateral estoppel effect to the District Court's findings[9], the Court is not convinced that the issue in the District Court action was the same as that involved in this case.[10] The party requesting the application of collateral estoppel

---

*In re Wally Findlay Galleries*, 36 B.R. 849 (Bankr.S.D.N.Y.1984).

**6.** *In re Davis*, 93 B.R. at 503 (citation omitted).

**7.** *In re Boynton*, 184 B.R. 580, 582 (Bankr. S.D.Cal.1995) (citation omitted).

**8.** *See In re Boynton*, 184 B.R. at 582 (citation omitted); *In re Marsch*, 36 F.3d 825, 827 (9th Cir.1994) (leaving open the question of whether a Chapter 11 petition may be used to avoid posting a bond when the enforcement of the judgment would cause severe business disruption); *In re Alton Telegraph Printing Co.*, 14 B.R. 238, 241 (Bankr.S.D.Ill.1981) (finding that bankruptcy was filed in good faith where debtor filed a plan, attended all meetings, cooperated with the court, and filed the bankruptcy to preserve its status as an ongoing concern and protect its employees and creditors); *In re Byrd*, 172 B.R. 970, 973 (Bankr.W.D.Wash.1994) (finding that filing bankruptcy to avoid posting a bond is not per se bad faith, but debtor must demonstrate that it had no alternative other than filing Chapter 11).

**9.** *See Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir.1997) (noting that Kansas courts have adopted the now-majority view which provides that the fact that an appeal is pending in a case does not generally vitiate the res judicata effect of a judgment); *In re Turner*, 204 B.R. 988 (9th Cir. BAP 1997) (citing *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir.1988), and noting that generally, federal court judgments are considered final for collateral estoppel purposes, even when the judgment is on appeal); *see also In re Schwarten*, 194 B.R. 239, 247–48 (D.Kan.1996).

**10.** *See In re Wallace*, 840 F.2d 762, 765 (10th Cir.1988) (holding that the court is bound by factual determinations made in a previous court on issues where: (1) the issue to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated by the parties in the prior action; and (3) the prior court's determination of the issue was necessary to the resulting final and valid judgment) (citations omitted).

has the burden of proving all of the requisites for such application.[11] United has not proven that the issue to be precluded is the same as that involved in the prior action.[12] The District Court was determining whether or not to award punitive damages, and if so, the amount. In this case, the Court must determine whether the Debtor could obtain a supersedeas bond. He testified that he attempted to obtain one and was unsuccessful.[13] United did not rebut this testimony. The Court finds that Debtor has shown that he was unable to obtain a supersedeas bond. Because Debtor was unable to obtain the bond, and was forced to file bankruptcy in order to preserve his companies as going concerns, the Court will not dismiss his bankruptcy for that reason alone.

■ United also argues that Debtor's case should be dismissed or converted because the circumstances surrounding the filing of Debtor's petition reveal his intent to use the Bankruptcy Code to frustrate United's efforts to enforce its rights. In *In re Winslow*, the district court held that to convert or dismiss on the basis of lack of good faith, the court should consider, among other things, "(1) the timing of the filing of the petition, (2) the motive of the debtor in filing the petition, and (3) the accuracies or inaccuracies of the debtor's assertions in its petition and schedules."[14]

■ The bare fact that a debtor desires to obtain the benefits of the automatic stay cannot by itself support a finding of bad faith.[15] The Court must consider the timing of the filing and Debtor's motive in filing and determine whether the Debtor intended to obtain the benefit of the automatic stay for an improper purpose. The evidence suggests that the Debtor did not file this bankruptcy solely to avoid posting a supersedeas bond, but was also motivated by a desire to reorganize or liquidate in an orderly fashion. Debtor claims his case was not filed merely as a litigation tactic. He claims that he desires to liquidate his non-exempt property in an orderly and efficient manner for the benefit of United, the co-owners of certain property, and ultimately for the benefit of himself, by increasing the amount by which United's judgment is reduced through such liquidation. Such an orderly liquidation, combined with payments from post-petition income, can form the basis for a confirmable plan in this case.

Certain assets of Debtor are worth more if liquidated in an orderly and controlled manner rather than at forced sale. Debtor is in the process of listing for sale his former homestead, and such sale, with the consent and cooperation of Mrs. Fox, would result in a far greater sum for the estate than a forced sale of the undivided

---

**11.** *In re Reid,* 149 B.R. 669, 671 (Bankr. D.Kan.1992).

**12.** *See In re Silva,* 190 B.R. 889 (9th Cir. BAP 1995) (finding that party seeking to assert collateral estoppel has burden of proving all requisites for its application and, to sustain burden, must introduce record sufficient to reveal controlling facts and pinpoint exact issues litigated in prior action).

**13.** The Court is aware that the District Court denied the defendants' motion for a stay of further proceedings. The court's order reflects that the defendants failed to show that they satisfied the elements to be considered in evaluating bond waiver motions. Midland did subsequently post a bond in the amount of $953,000. In spite of the failure by all of the defendants to show the elements for waiver at

that time, the Debtor subsequently testified in this Court that he attempted to obtain a bond and was unsuccessful.

**14.** *In re Winslow,* 123 B.R. 641, 646 (D.Colo. 1991) (citation omitted), *aff'd,* 949 F.2d 401 (10th Cir.1991).

**15.** *See* 7 *Collier on Bankruptcy,* 15th Ed. Revised, Lawrence P. King, et al., ¶ 1112.07[6][b][i] (1998) (stating that "[b]ecause the automatic stay is an important incident of the bankruptcy filing, the bare fact that the debtor desires to obtain the benefits of this element of bankruptcy relief cannot by itself support a finding of bad faith. Rather, the debtor must intend to obtain the benefit of the automatic stay for an improper purpose, such as merely to frustrate the rights of creditors rather than to reorganize.").

interest of Debtor alone in the property. Debtor is also listing the property at 406 S. 5th for sale. Debtor's interest in Midland (25%) and Kaw Valley (49.75%) may also be liquidated. The remaining shares of the stock in each corporation are held by family members of Debtor. The forced sale of minority interests in closely held corporations will result in far less than the Debtor's sale of such interests. Debtor is exploring two leads toward the sale of all the assets and/or stock of Midland. United is a direct competitor of Midland and Debtor believes United's goal is to force Midland out of business regardless of the amounts recovered on its judgment against Debtor.

Debtor has timely filed his disclosure statement and plan of reorganization. His plan proposes to pay all creditors, including United, in full within less than four and one-half years. Debtor is attempting to provide a reasonable and orderly repayment of debts, while at the same time, provide a mechanism for him to maintain his business interests.

Because reorganization is favored over liquidation through conversion or dismissal, the Court is hesitant to convert or dismiss at this stage of the proceeding.[16] In *Carolin Corp. v. Miller*, the court noted that the bankruptcy court's power to dismiss for want of good faith in filing,

> while essential to proper administration of Code policies and implicit in the statute itself, is obviously one to be exercised with great care and caution. Decisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made. Considering dismissal at this point, a court must keep in mind that '[c]reditors who become entangled in hopeless Chapter 11 cases ... have remedies of relief from stay, adequate protection, and dismissal or conversion based on the enumerated grounds in 11 U.S.C. § 1112(b). Dismissal on grounds of bad faith filing should not be judicially [employed] as an easy alternative to other post-petition creditor remedies, thereby[ ] subverting the reorganization and confirmation scheme of the Code.'[17]

Most of Debtor's actions that United complains about were done prior to the bankruptcy filing. United presented evidence suggesting mismanagement, negligence, losses or unusual dealings before bankruptcy.[18] United presented evidence

---

**16.** *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (stating that "[b]y permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners.... Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if 'sold for scrap' "); *see also In re Stone Ridge Assocs., Ltd. Partnership,* 142 B.R. 967, 974–75 (Bankr.D.Kan.1992) (finding that there was "insufficient evidence to justify a finding of bad faith filing at the initiation of the case," but holding that other grounds enumerated in § 1112(b), arising after the filing of the Chapter 11 petition, supported dismissal of the case); *see also In re Powell Bros. Ice Co.,* 37 B.R. 104, 107 (Bankr.D.Kan. 1984) (citation omitted) (stating that "[r]eorganization, rather than liquidation through conversion or dismissal, is favored").

**17.** *Carolin Corp. v. Miller,* 886 F.2d 693, 700 (4th Cir.1989) (citing *In re Mill Place Ltd.*

*Partnership,* 94 B.R. 139, 141 (Bankr.D.Minn. 1988)); *see also In re Timbers of Inwood Forest Assocs., Ltd.,* 808 F.2d 363, 372–73 (5th Cir.1987) (noting that Congress clearly intended to provide a wide range of remedies for the secured creditors of a debtor that does not have a reasonable possibility of reorganizing or that unreasonably delays in its efforts to reorganize), *aff'd* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

**18.** In United's post-trial brief, it alleges that Debtor admitted, in responses to requests for admission, that false statements were made and filed with the District Court about the parties' settlement. United attached the responses to the requests for admission as an exhibit to the post-trial brief. Debtor has filed a motion to strike the attached responses and the portion of United's post-trial brief that refers to them, because they were not offered as evidence at the trial in this matter. The Court is denying the motion to strike, because the responses to requests for admis-

that Debtor signed and filed tax forms and other corporate documents under penalty of perjury even though those documents were both inaccurate and inconsistent with each other. Debtor testified that he did not "have the slightest" idea or explanation where almost $2.7 million in income he earned in the six years prior to his bankruptcy had gone. United's judgment is based, in part, on Debtor's repudiation of a settlement agreement which he signed, and his ongoing fraud against United to conceal his breach was so egregious that the District Court set the parties' settlement aside and subsequently assessed punitive damages against him. Evidence of Debtor's previous property transfers and dealings among his various corporations, perhaps establishes that he is in control of his closely held corporations and that the corporate veil should be pierced, as the District Court has already concluded. However, such evidence is insufficient to establish a bad faith filing.

█ As the court noted in *Carolin Corp. v. Miller, supra,* denial of access to bankruptcy relief at the initial stages of the proceeding is inherently drastic and should not be employed as an easy alternative to other post-petition creditor remedies. Creditors have other remedies such as relief from stay, adequate protection, dismissal or conversion based on the enumerated grounds in 11 U.S.C. § 1112(b), and appointment of a trustee or examiner. If Debtor engages in inappropriate conduct during this Chapter 11 proceeding, dismissal, conversion, or the appointment of a trustee or examiner may be warranted. The Debtor's testimony about his current, postpetition financial affairs was vague, and he suggested that he is only superficially knowledgeable about his businesses. This Court did not find this testimony

credible. In fact, at Debtor's request, the Court has ordered the appointment of an examiner to review documents and examine the parties and their accountants for the limited purpose of preparing a report for the Court's use at the Debtor's disclosure statement hearing.

United argues that Debtor's testimony provides no assurance that he will now abandon his ongoing pattern of fraud, deceit, and nondisclosure in his financial dealing with both his creditors and other governmental entities. United argues that although Debtor tries to blame errors on his accountant or his wife, his conduct and attitude do not inspire confidence that he will competently manage his affairs as a fiduciary for his creditors. Yet, United did not ask for the appointment of a trustee and did not present sufficient evidence warranting the appointment of a trustee at this time. Although United has not sought such relief, some of the evidence that United presented weighs in favor of appointment of a trustee or examiner. Debtor's original schedules were inaccurate, and were only amended as United unearthed various defects during discovery. Debtor claims he cannot value his stock holdings in his family corporations, Kaw Valley and Midland, though he founded those companies, serves as their president, and plans to pay United out of their future earnings. When debtor was asked about the substantial net worth or retained earnings of his companies, he testified that "[t]here is some nice looking figures, but I don't know where the monies are." Debtor's Kaw Corporation had current assets of $659,822 at the end of 1993, but when asked if any value remaining in Kaw Corporation was reflected on Debtor's financial statements filed in this case, Debtor stated that he didn't think that he put any value on Kaw

sion were duplicative of the evidence already presented by way of the District Court's opinion. The District Court's December 1, 1997 Memorandum and Order found that "... Fox intentionally concealed his misconduct over several years. He filed fraudulent registrations with the Patent and Trademark Office,

deliberately sold inferior aluminum phosphide as Quick–Phos, provided erroneous deposition testimony, falsified multiple invoices, and submitted fraudulent information to both plaintiffs and the court. Further, his trial testimony was hardly the hallmark of truthfulness."

Corporation because he didn't "know where it is or if it is there." When asked what assurances the Court had that Debtor would be able to account for his money in the future, he stated that he "signed this document saying this is what I would do; and as I understand it, that is what I have to do."

*Motion for Relief From Stay*

United seeks an order lifting the automatic stay and compelling the Debtor to turn over $300,000 allegedly held in constructive trust for the benefit of United. United argues that pursuant to the District Court's Memorandum and Order, Debtor holds $300,000 in constructive trust for the benefit of United, which it argues is an amount equivalent to the August 1992 stock transfer and the 1996 Midland distribution. In the District Court action, United alleged that Midland made an unexplained $100,000 "distribution" to Fox's children in 1996, and that Debtor transferred half of his Midland stock to his children on August 1, 1992. United's accounting expert, Marc Vianello, presented evidence at the trial in this case that, based on information in Midland's tax returns and other financial records, the Midland stock which the Foxes transferred to their children in August 1992 was worth at least $200,000. United argues that the funds held in constructive trust are not property of Debtor's bankruptcy estate and should be turned over to United in partial satisfaction of its judgment.

The District Court found that:

[P]laintiffs allege that Fox transferred half of his Midland stock to his children on August 1, 1992 and that Midland made an unexplained $100,000 'distribution' to Fox's children in 1996. Plaintiffs contend that the asset transfers were designed to frustrate potential judgment creditors. Defendants have made no attempt to controvert plaintiffs' arguments and apparently do not object to the establishment of a constructive trust.

The court cannot impose a constructive trust on the specific transactions described above because the transferees—Fox's children—are not parties to this suit. The court has no jurisdiction over those individuals. However, the court may impose a constructive trust on the remaining assets of Midland and Fox in an amount equivalent to the August 1992 Fox stock transfer and 1996 Midland distribution. This trust shall remain in effect until plaintiffs' judgment has been satisfied.

■ This Court is uncertain of the effect the District Court intended by imposition of the constructive trust in this case. The District Court noted that it could not impose the trust on the specific transactions involved because the transferees were not parties to the suit. Therefore, the District Court imposed the trust on the remaining assets of Midland and Fox, but limited the trust to the amount of the August 1992 Fox stock transfer and the 1996 Midland distribution. However, the District Court did not place a value on the 1992 stock transfer. The District Court did not identify specific property of Debtor or Midland as being the trust res, and did not order the turnover of funds to United. It appears that the District Court was imposing a trust to prevent Debtor from further dissipating assets, rather than ordering the turnover of funds. The fact that the District Court stated that the trust was to remain in effect until United's judgment is satisfied also suggests that the District Court did not contemplate a turnover of funds.

In *In re Allied General Agency*,[19] the court affirmed the bankruptcy court's determination that the movants did not meet their burden of proving that the state court actually intended to create a constructive trust, as opposed to a prejudgment writ of attachment designed to preserve the status quo pending further order of the court. The court noted that essen-

19. 229 B.R. 190, 195 (D.Ariz.1998).

tial to the imposition of a constructive trust is the identification of specific property, or res, in which the claimant has a direct interest.[20] The court found that notwithstanding the state court's use of the words "constructive trust," the state court intended to attach the funds in anticipation of a substantial damages award against the holder of the funds and to prevent further dissipation of those funds prior to the execution of that award.[21] Thus, the court determined that it was required to elevate substance over form and disregard the label given to the funds in the account and instead look at what the account was intended to accomplish.[22]

Therefore, without further direction from the District Court, this Court is reluctant to find that specific assets of the Debtor are held in trust and therefore excluded from Debtor's bankruptcy estate. The trust was imposed on the remaining assets of Debtor and Midland, but was limited to the amount of the specific transactions. Midland is not a debtor in this bankruptcy and Midland has posted a supersedeas bond in the District Court action.

The Debtor cites *In re Gurley*,[23] for the proposition that the constructive trust claimant should be entitled to priority as a secured creditor by virtue of the judgment. Debtor states that he is willing to treat $300,000 of United's claim as secured pursuant to his plan of reorganization. This treatment would be consistent with the reasoning set forth in *Gurley*. This Court will accept the Debtor's suggested treatment unless the parties obtain a clarification from the District Court which shows that the District Court intended to impose a constructive trust upon specific assets that should be excluded from Debtor's bankruptcy estate. The parties obtained relief from the stay to seek rulings on post-trial motions. This Court is not aware of whether or not those motions seek a clarification regarding the imposition of the constructive trust in this case.

*Motion to Approve Compromise*

Debtor has also filed a motion, pursuant to Bankruptcy Rule 9019, to approve a compromise with his wife, Phyllis Fox. Prior to filing bankruptcy, Debtor claims he moved from his residence to a trailer he had placed on a 343–acre tract owned jointly by Debtor and his wife, Phyllis Fox. Debtor expended hundreds of thousands of dollars to improve this 343 acres, including constructing a dam creating a 40–acre lake. In November of 1997, Debtor transferred his one-half interest in 183 acres of the tract to Phyllis Fox in exchange for $7,000 and her one-half interest in a piece of property in Leavenworth, Kansas, known as the Moats Building. Debtor has filed a motion to approve a compromise with his wife which contemplates payment of an additional $15,500 by Phyllis Fox, based on updated appraisals on the properties. In exchange, Debtor seeks to relinquish any potential cause of action the bankruptcy estate may have against Phyllis Fox to set the transaction aside under 11 U.S.C. § 548 as one in which Debtor received less than reasonably equivalent value. United has objected to the compromise, arguing that it still falls short of providing the estate with equitable value for the property transferred.

Debtor is claiming a homestead exemption on the 160–acre tract on which the trailer and the lake are located. United and the United States Trustee have each filed an objection to the Debtor's claimed homestead exemption. These objections, along with Debtor's disclosure statement, are set for hearing before this Court on April 16, 1999. The Court finds that Debtor's motion to approve compromise cannot be decided until the issues surrounding the

---

20. *Id.* at 195–196.

21. *Id.*

22. *Id.* at 197–198.

23. 222 B.R. 124, 135–36 (Bankr.W.D.Tenn. 1998).

objections to Debtor's exemptions are resolved. Prior to November 18, 1987, Debtor and Phyllis Fox jointly owned the 343 acre tract. After Debtor conveyed the 103 acre tract and the 80 acre tract to Phyllis Fox, he and Phyllis Fox remained the joint owners of the 160 acre tract that Debtor claims as his homestead. United alleges that Debtor's division of the property and carving out of his homestead parcel rendered the other two parcels valueless and of no use to anyone other than Debtor and his family. Because Debtor's transfers and division of the property is at issue with regard to the objections to exemptions, the Court finds that the motion to approve compromise, which involves these transfers, should be considered at the same time as the objections to exemptions.[24]

**IT IS THEREFORE ORDERED BY THE COURT** that the Motion of United Phosphorus Ltd. to Convert This Proceeding to a Liquidation Under Chapter 7, or, Alternatively, to Dismiss Bankruptcy shall be DENIED.

**IT IS FURTHER ORDERED BY THE COURT** that Debtor's Motion to Strike Portion of United Phosphorus Ltd.'s Post Trial Brief is DENIED.

**IT IS FURTHER ORDERED BY THE COURT** that United Phosphorus Ltd.'s Motion For Relief From Automatic Stay to Compel Debtor to Turn Over Property Held in Trust shall be DENIED.

**IT IS FURTHER ORDERED BY THE COURT** that Debtor's Motion to Approve Compromise, Pursuant to Bankruptcy Rule 9019, With Phyllis Fox shall be HELD IN ABEYANCE pending the Court's ruling on the objections to Debtor's homestead exemption.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bank-

ruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

---

24. The Court notes that United has also filed an Adversary Proceeding (No. 98–6033) that seeks to avoid the transfers to Phyllis Fox as fraudulent transfers pursuant to 11 U.S.C. § 548. The parties filed a joint motion requesting an extension of time for filing dispositive motions and the final pretrial order until 10 days after this Court's ruling on United's motion to dismiss or convert.