In the MATTER OF STRUG–DIVISION, LLC, Debtor.

Strug–Lawrence, LLC, Debtor.

Bankruptcy Nos. 07 B 09165 and 07 B 09166.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 14, 2007.

Arnold G. Kaplan, Law Offices of Arnold Kaplan Ltd., Paul M. Bach, Law Offices of Paul M. Bach, for Debtor.

Office of the U.S. Trustee, for Trustee or Other Attorneys.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AND MEMORANDUM OPINION ON MOTION TO DISMISS

JACK B. SCHMETTERER,
Bankruptcy Judge.

The two subject Debtors filed these cases under Chapter 11 of the Bankruptcy Code. Motions were filed by secured creditor Natixis Real Estate Capital, Inc. ("Natixis") to Dismiss both Chapter 11 Bankruptcy cases. Consolidated trials were held on both Motions. After considering the evidence and arguments presented by the parties, the following Findings of Fact and Conclusions of Law are made and will be entered, pursuant to which the two cases have been dismissed:

### FINDINGS OF FACT

#### A. The Parties

1. Strug–Division, LLC and Strug–Lawrence, LLC ("Debtors") filed separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on May 19, 2007.

2. The Debtors are limited liability companies whose sole purpose is the purchase and sale of real estate. Strug–Division is the sole member of Boan, LLC, and that membership interest is Strug–Division's sole asset. Strug–Lawrence is the sole member of 910 West Lawrence, LLC, and that membership interest is Strug–Lawrence's sole asset.

Carina M. Segalini, Esq., Polsinelli Shalton Flanigan Suelthaus, for Natixis Real Estate Capital, Inc.

3. Boan, LLC's sole asset is an apartment complex located at 11 West Division Street, Chicago, Illinois, commonly known as the Gold Coast Suites. 910 West Lawrence, LLC's sole asset is an apartment complex located at 910 West Lawrence Avenue, Chicago, Illinois, commonly known as the Lakeside Towers. The Debtors do not own these real properties, but merely own the equity interests in the respective limited liability companies that do own the properties. Neither Boan, LLC nor 910 West Lawrence, LLC are parties to the present action, nor have they filed for relief under the Bankruptcy Code.

4. Dragoljub Giljen, also known as Daniel Giljen ("Giljen"), is the sole member of Strug–Division LLC and Strug–Lawrence LLC. Accordingly, the Debtors as well as the non-debtor entities owned by the Debtors are controlled by Giljen.

5. Natixis Real Estate Capital, Inc. ("Natixis") is the sole creditor of the two Debtors.

### B. *Factual Background*

6. In August, 2006, the Debtors and their related entities entered into a series of loan transactions with Natixis to facilitate the purchase of the Gold Coast Suites and the Lakeside Towers.

7. Boan, LLC and 910 West Lawrence, LLC ("Senior Borrowers"), borrowed $14,650,000 from Natixis, secured by a mortgage on the two properties. The loan agreement, promissory note and mortgage will hereinafter be referred to as the "senior loan." Giljen personally guaranteed this senior loan.

8. In order to complete the financing, the Debtors borrowed $1,100,000 from Natixis, secured by a security interest in the Debtors' sole asset—their membership interest in Boan, LLC and 910 West Lawrence, LLC. The loan agreement, promissory note and security interests will hereinafter be referred to as the "mezzanine loan." Giljen personally guaranteed this mezzanine loan.

9. The Senior Borrowers made only one payment on the senior loan. In early March, 2007, Natixis accelerated the debt due under the senior loan. On March 19, 2007, Natixis filed a complaint to foreclose its liens on the Senior Borrowers' properties.

10. Similarly, the Debtors only made one payment on the mezzanine loan. After the Debtors defaulted on the mezzanine loan, Natixis accelerated the debt due under the mezzanine loan documents. As of the date of the Debtor's bankruptcy filings, they owed Natixis more than $3,282,033 on the mezzanine loan.

11. On May 8, 2007, Natixis gave notice to the Debtors that their equity interests in Boan, LLC and 910 West Lawrence, LLC were to be sold pursuant to the provisions of the Uniform Commercial Code. May 21, 2007, was set as the sale date. The Debtor's filed Chapter 11 bankruptcy petitions on May 19, 2007, to delay the scheduled foreclosure sale.

### C. *The Proposed Plans*

12. The Debtors proposed two possible plans at the hearing on Natixis' Motions to Dismiss.

13. Pursuant to one Plan, Debtors proposed to sell the Gold Coast Suites property for $14.2 million while using the income generated by the Lakeside Towers to service the remaining loan balance. However, Debtors were unable to produce a signed Purchase and Sale Agreement for the Gold Coast Suites, or a prospective buyer willing to make such an offer. Debtors also alleged that they had received an unsolicited offer to sell Lakeside Towers for $8.3 million. However, Debtors were unable to produce a signed Purchase and Sale Agreement or offer evi-

dencing this alleged offer for $8.3 million, or buyer willing to make such an offer.

14. Pursuant to the alternative Plan, Debtors proposed to liquidate both properties over time, thereby paying off the entire balance of the loan.

15. Statements of fact contained in the Conclusions of Law section shall constitute additional Findings of Fact.

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This issue constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

*Discussion*

■ The issue presented by the instant Motion to Dismiss is whether Debtors' Chapter 11 bankruptcy petitions should be dismissed pursuant to 11 U.S.C. § 1 112(b)(1) because they were assertedly filed in bad faith. It is the burden of the debtor to establish that the petition was filed in good faith. *In re SGL Carbon Corp.*, 200 F.3d 154, 162 n. 10 (3d Cir.1999) (citing *In re Fox*, 232 B.R. 229, 233 (Bankr.D.Kan.1999); *Stage I Land Co. v. United States*, 71 B.R. 225, 229 (D.Minn. 1986)). For the reasons set forth below, it is found and held that Debtors did not meet their burden, and therefore the motions were granted and both cases were dismissed.

■ According to § 1112(b)(1) of the Bankruptcy Code, Title 11 U.S.C., "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, if the movants establishes cause."

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 expanded the list of causes set forth in § 1112(b)(4) from ten to sixteen. It is well established that the enumerated causes set forth in § 1112(b)(4) are not exclusive. *E.g., SGL Carbon*, 200 F.3d at 160. Although bad faith is not one of the sixteen grounds for dismissal promulgated in 11 U.S.C. § 1112(b)(4), several circuit court opinions have recognized and affirmed the authority of bankruptcy courts to dismiss Chapter 11 cases that fail to meet a good faith standard. *See In re Madison Hotel Assoc.*, 749 F.2d 410, 426 (7th Cir.1984) *(dicta).* *See also SGL Carbon*, 200 F.3d at 160–61; *Marsch v. Marsch*, 36 F.3d 825, 828 (9th Cir.1994); *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986).

Natixis argues that a nine part test is recognized in this District for determining whether a Chapter 11 petition was filed in bad faith. *In re South Beach Securities, Inc.* 341 B.R. 853, 856–57 (N.D.Ill.2006). Those factors include whether:

> 1) [T]he debtor has any assets; 2) the debtor has recently transferred assets; 3) the debtor has any employees; 4) the debtor has any cash flow to sustain reorganization; 5) the debtor has any chance of confirming a reorganization plan; 6) the debtor and one of its creditors have reached a standstill in state court litigation; 7) the debtor is trying to delay its creditors or reduce their rights; 8) there are allegations of wrongdoing by the debtor or its principals; or 9) bankruptcy offers the only possibility of preventing the loss of property.

*Id.* The opinion in *South Beach* culled these factors from a decision by the undersigned in *In re Int'l Oriental Rug Center*, 165 B.R. 436, 442–43 (Bankr.N.D.Ill.1994) (citing *Little Creek Development Co.*, 779

F.2d at 1072–73). On the other hand, neither *South Beach* nor *Int'l Oriental Rug Center* provide any framework for analyzing when some of the nine factors indicate bad faith. Congress has not specified that any of the factors listed in *South Beach* and other cases constitute bad faith, and we as judges cannot rewrite Congress' intent.

■ In ruling on a motion to dismiss for lack of good faith, courts must be mindful of, and attempt to preserve, the balance of interests fashioned by Congress under Chapter 11 of the Bankruptcy Code, including a policy of open access to the bankruptcy process. *See, e.g., In re Johns–Manville Corp.,* 36 B.R. 727, 735–37 (Bankr.S.D.N.Y.1984). As opined in *In re Schlangen,* 91 B.R. 834, 837 (Bankr. N.D.Ill.1988), the Court must be careful not to deny the protection of the Bankruptcy Code to a debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith.

■ The key test of good faith in Chapter 11 is whether the debtor has proposed or can propose a legally and economically feasible plan of reorganization. *See Marsch,* 36 F.3d at 828 ("The test is whether a debtor is attempting to unreasonably deter and harass creditors *or attempting to effect a speedy, efficient reorganization on a feasible basis.")* (emphasis added). In other words, the question is whether the case and possible plan serve a valid reorganizational purpose. *SGL Carbon,* 200 F.3d at 165. If not, then the case was filed only to harass and delay creditors, and therefore was filed in bad faith.

■ Of course, some factors listed in *South Beach* and other cases may be relevant to determine whether a viable plan of reorganization is in the offing. Absence of assets, lack of employees and negative cash flow may show that a plan is not economically or legally feasible. Prebankruptcy wrongdoing by the principals of a debtor may show them to be unreliable or incompetent managers, thereby casting doubt on any plan they propose.

■ In the case at bar, Movant has carried its burden to show that no viable plan is possible, and that neither of the proposed plans is legally or economically feasible.

First, Debtors have no assets, and they cannot reorganize assets that they do not own. Debtors do not actually own the real property; they merely hold membership interests in the limited liability companies that do own the properties. While Mr. Giljen (as sole member of both Debtors) ultimately controls the real properties, he has decided not to bring the controlling entities into these or other bankruptcy proceedings. In fact, Debtors' counsel indicated that Debtors are allowing the foreclosure cases against the entities owning the properties to go forward and will only consider bringing them into bankruptcy when necessary to prevent a sale. Thus, the principal of these debtors has elected to retain his control of the properties, while at this stage in the proceeding no court jurisdiction lies over the properties proposed to be dealt with in the pending bankruptcies. Therefore, any plan for reorganization that entails sale of one or both properties is not legally feasible. Indeed, in this context, the decision by Giljen not to give the bankruptcy court jurisdiction over properties supposedly to be used in the proposed plans is plain bad faith. Both plans, which rely on sales of properties not owned by these Debtors, fail for that reason.

The first Plan fails for two additional reasons.

First, Natixis objects to the sale of the Gold Coast Suites pursuant to 11 U.S.C. § 363(f). If a secured lender objects to a sale under § 363(b) or (c), the trustee may sell property free and clear of such interest only if "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property," or "applicable nonbankruptcy law permits the sale of such property free and clear of such interest." 11 U.S.C. § 363(f)(1) and (3). In this case, both the senior and mezzanine loans were cross-collateralized between the Gold Coast Suites and the Lakeside Towers. Because the proposed sale price of $14.2 million for the Gold Coast Suites would not satisfy the aggregate value of all liens, Debtors cannot overcome Natixis' objection by way of § 363(f)(3). In addition, Debtors failed to make any argument or provide any authority showing that under Illinois nonbankruptcy law, the loan documents may be severed in some way to allow for sale of the Gold Coast Suites while securing the balance of the loan with a mortgage on the Lakeside Towers. Thus, Debtors failed to overcome Natixis' objection by way of § 363(f)(1). Natixis § 363(f) objection is a second and separate reason that the first Plan is not legally feasible.

Finally, the first Plan is not economically feasible, because the income generated by the Lakeside Towers after the proposed Gold Coast Suite sale is insufficient to service the balance of the loan. The receiver for both properties testified that the Lakeside Towers generated a net cash flow of approximately $12,000 for July, 2007, based on approximately ninety-four percent occupancy. In addition, he testified that he does not see substantial revenue increases or expense decreases. On the other hand, evidence showed that it would take at least three times that amount to service remaining debt if the sale were possible, and therefore the possible Plan is not economically feasible.

## CONCLUSION

It appears that the Debtors' Chapter 11 filings were filed in bad faith, designed only to delay Natixis' efforts to foreclose its liens and not with any real intent or ability to reorganize. Based on the foregoing, Natixis Real Estate Capital, Inc.'s Motions to Dismiss both cases were granted by separate orders.