In re Warren K. BOYNTON and
Susi Boynton, Debtors.

Bankruptcy No. 94–03673–B11.

United States Bankruptcy Court,
S.D. California.

July 13, 1995.

Gerald N. Sims, Pyle Sims Duncan & Stevenson, San Diego, CA, for debtors.

John P. Pirkle, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for I.R.S.

Tiffany Carroll, Office of the U.S. Trustee, San Diego, CA, for U.S. Trustee.

## ORDER ON MOTION TO DISMISS

PETER W. BOWIE, Bankruptcy Judge.

This matter came on regularly for hearing on the motion to dismiss brought by the Internal Revenue Service. The Internal Revenue Service contends that the debtors have filed this proceeding in Chapter 11 in bad faith. Specifically, the Internal Revenue Service contends that the debtors, after suffering an adverse judgment in the Tax Court, sought the protection of the Bankruptcy Code in order to avoid the posting of an appeal bond, and not for any legitimate bankruptcy purpose.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court of the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

### FACTS

Mr. Boynton was part of a development group that created the biomedical company IMED. IMED was purchased from the group by Warner–Lambert Pharmaceuticals for a substantial amount of money. The partners each filed their tax returns, treating the proceeds in a certain way. Subsequently, the Internal Revenue Service challenged that treatment, and an action was brought in the Tax Court. The Tax Court concluded that the debtors were liable for income tax for 1982 in the amount of $2,314,440.00. To that amount, the Tax Court added a negligence penalty of $2,452,911.98. The opinion of the Tax Court was filed on September 22, 1993.

Debtors, and similarly situated Tax Court petitioners, filed a notice of appeal on or about February 4, 1994. The Tax Code, Title 26 of the United States Code, provides a mechanism to stay assessment and collection of a deficiency by the posting of a bond. Under 26 U.S.C. § 7485, the Tax Court sets the amount of the bond. The amount cannot exceed twice the portion of the deficiency which is the subject of the appeal, and the bond must be issued by an approved surety. Debtors did not ask the Tax Court to fix an amount for a bond prior to filing their notice of appeal. Consequently, there was no stay of either assessment or collection under the Internal Revenue Code. Because there was no stay despite the filing of the notice of appeal, the Internal Revenue Service assessed the deficiency and calculated the accrued interest on the deficiency and on the penalty. The interest on the deficiency was $4,674,379.96, and was $926,951.04 on the penalty.

Debtors have significant assets, largely in liquid form in an investment account with Goldman Sachs. The balance in that account as of the petition date was over $5,000,000. In addition, the debtors own real property, with one coastal residence assertedly having substantial equity, and some valuable personal property. Notwithstanding those assets, the debtors chose not to follow the stay procedures of 26 U.S.C. § 7485 by posting a bond, although it appears that, depending on the amount set by the Tax Court (and whether the amount would include the negligence penalty as well as the deficiency), the debtors may have been able to do so. Instead, after the Internal Revenue Service made its assessment, including the interest amount, the Boyntons chose to file their petition in Chapter 11. By so doing, they invoked the protection of the automatic stay to prevent the Internal Revenue Service from levying on their assets, without having to post a bond.

When debtors filed their bankruptcy petition, they listed two creditors, the Internal Revenue Service and the Franchise Tax Board. The debt owed to the Franchise Tax Board is unknown in amount because it is a debt which had not been assessed and was dependent upon resolution of the claim of the Internal Revenue Service. Subsequently, debtors amended their schedules to add an unsecured debt assertedly owed to Richard Cramer, who happens to be a co-appellant of the adverse Tax Court decision. The debt purportedly is for some of the debtors' portion of fees and costs of the appeal apparently advanced by Cramer.

## DISCUSSION

The Internal Revenue Service makes three main arguments. First, the filing was in bad faith because it was for the purpose of avoiding the posting of a bond on appeal while preventing the Internal Revenue Service from attaching any assets to satisfy its judgment. Second, the Internal Revenue Service argues that the matter is really a two party dispute between debtors and itself. Third, the Service urges dismissal because the funds of the estate are being diminished by the administrative costs of the Chapter 11 proceedings, the fees and costs of prosecution of the appeal of the Tax Court judgment, and the living expenses of the debtors being paid by the estate.

This Court has the authority to dismiss a Chapter 11 case "for cause" pursuant to 11 U.S.C. § 1112(b). A filing that lacks good faith establishes cause for dismissal under § 1112(b). *In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986). A lack of good faith, however, is only present where the debtors actions are a clear abuse of the bankruptcy process. *Id.*

The Debtors admit that they filed this Chapter 11 proceeding to prevent the Internal Revenue Service from enforcing the Tax Court judgment. The Internal Revenue Service's position is that preventing enforcement of a judgment is not a proper justification for a Chapter 11 filing. The Tax Code provides that the proper way for a taxpayer to stay enforcement of a judgment is by the posting of a bond. 26 U.S.C. § 7485(a). The Tax Court fixes the sum of the bond, not to exceed double the amount of the deficiency. The Internal Revenue Service asserts that the debtors made no attempt to secure a bond and that they are trying to use the bankruptcy forum as a vehicle to circumvent the bond requirement. The Internal Reve-

nue Service further asserts a lack of proper purpose because the debtor is not truly trying to reorganize. Rather, debtors are only attempting to stay enforcement of the judgment long enough to prosecute their appeal.

The issue of the use of bankruptcy relief in lieu of an appeal bond has been the subject of litigation and there are cases that favor each side of the issue. Some cases, such as *In re Karum*, 66 B.R. 436 (Bankr.W.D.Wash.1986), *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr.S.D.N.Y.1984), and *In re Smith*, 58 B.R. 448 (Bankr. W.D.Ky.1986), were dismissed. In others, such as *In re Alton Telegraph Printing Co.*, 14 B.R. 238, 241 (Bankr.S.D.Ill.1981), *In re McLaury*, 25 B.R. 30 (Bankr.N.D.Tex.1982), and *In re Corey*, 46 B.R. 31 (Bankr.D.Hawaii 1984) the dismissals were denied. *In re Holm*, 75 B.R. 86, 87 (Bankr.N.D.Cal.1987). The cases granting dismissal on bad faith grounds, with the exception of *Karum*, dealt with smaller judgments where the debtor had the ability to satisfy the judgment without losing the ability to stay in business. The cases denying the motion to dismiss typically involved larger judgments that would render the debtor unable to continue its business and allowed the judgment creditor only a partial recovery. *Id.*

The Internal Revenue Service cites several cases to support its position that the Debtors' Chapter 11 was filed in bad faith. In a recent Ninth Circuit case, the court found filing bankruptcy to delay collection of a judgment constituted bad faith warranting dismissal. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir.1994). In another decision, a bankruptcy court held that bad faith is indicated where the bankrupt would not be insolvent except for the judgment. *In re Karum Group, Inc.*, 66 B.R. 436 (Bankr.W.D.Wash.1986).

In *Marsch*, Mrs. Marsch filed bankruptcy to avoid a judgment requiring that she return the value of stock transferred to her by her ex-husband. Mr. Marsch moved to dismiss on the grounds that the petition was filed in bad faith and solely to avoid paying the judgment or posting an appeal bond. The Ninth Circuit upheld the Bankruptcy Court's ruling that the filing did not serve a legitimate purpose under the Bankruptcy Code and that it was not filed in the best interest of the parties pursuant to 11 U.S.C. § 305(a)(1). *Marsch*, 36 F.3d at 827. The decision specifically left open the question of whether a Chapter 11 petition may be used to avoid posting a bond when the enforcement of the judgment would cause severe business disruption.

In the *Karum* case, the debtor was unable to post a bond. However, the court held that it was improper to invoke the protection of the Bankruptcy Code in this situation where the debtor would not be insolvent but for the judgment. *Karum*, 66 B.R. at 436. The court held that a debtor may not use a Chapter 11 filing as a litigation tactic to avoid the posting of a supersedeas bond. *Id.* at 438, [Citing *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y.1984) ]. Because the debtor was unable to propose a meaningful plan of reorganization until the litigation was complete, the filing was not for rehabilitation purposes, and was dismissed. *See also In re Smith*, 58 B.R. 448 (Bankr.W.D.Ky.1986).

The primary case allowing the filing of a Chapter 11 in lieu of posting a bond is *In re Alton Telegraph Printing Co.*, 14 B.R. 238, 241 (Bankr.S.D.Ill.1981). In that case, the court found the bankruptcy was filed in good faith because the petitioner had filed a plan of reorganization, attended all meetings and cooperated with the court. *Id.; see also In re Corey*, 46 B.R. 31 (Bankr.D.Haw.1984). The court also found that the debtor intended to prosecute its appeal notwithstanding its bankruptcy and filed the petition to preserve its status as an ongoing concern and protect its employees and its creditors. *Alton Telegraph Printing Co.*, 14 B.R. at 241.

Another decision in the Ninth Circuit has ruled that the filing of a Chapter 11 petition to avoid posting a bond does not constitute, in itself, a bad faith filing where the party cannot afford to post such a bond. *In re Glenn McKitrick Byrd*, 172 B.R. 970 (Bankr. W.D.Wash.1994). However, unless the debtor can demonstrate that it had no alternative other than filing a Chapter 11, that court stated that the petition should be dismissed. *Id.*

Generally, two types of cases have allowed a Chapter 11 filing in lieu of a supersedeas bond. These are: 1) where there is a multi-national company faced with mass tort litigation; or 2) where a large debt would force the debtor to close its business and liquidate. *Mueller v. Sparklet Devices (In re Sparklet)*, 154 B.R. 544, 548 (Bankr.E.D.Mo.1993).

▬ The established rule is that the determination of good faith depends upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and local financial realities. *In the Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986). A finding of bad faith requires both an objective showing of the futility of rehabilitation and a subjective showing of bad faith. *Carolin v. Miller*, 886 F.2d 693, 700–05 (4th Cir.1989).

The instant case is difficult to assess in the light of the foregoing elements. First, we do not know what the amount of the bond required by the Tax Court would have been because the debtors never asked the Tax Court to set a bond. The language of the statute does not reflect whether the bond would have been calculated only on the tax deficiency of approximately $2.3 million, or whether the negligence penalty would have been included in the calculation. It is clear that the bond would not have included the interest on the deficiency and the penalty because those liabilities could not have been assessed if the bond had been posted.

Consequently, it is not at all clear that debtors could not have posted the requisite bond from the over $5 million in assets in their investment account, alone.

Next, the debtors argue that they are a "going concern" whose operations would have been seriously disrupted if they had been forced to post a bond. The Internal Revenue Service challenges that assertion. Mr. Boynton is a developmental entrepreneur. He puts effort, and sometimes capital, into developing biomedical companies. However, his main occupation is coordinating with his investment broker at Goldman Sachs on the management of his investment portfolio of over $5 million. The concerns that prompted the court in *Alton Telegraph* are not present in any comparable degree in the instant case.

The instant case is not about preserving a viable company that provides jobs as an operating business, even assuming the Tax Court bond amount would jeopardize those operations.

Turning to the second argument of the Internal Revenue Service—that the dispute is only a two-party dispute that does not belong in bankruptcy for that reason, the argument is close to accurate. The Court has no opinion on the merits of the Cramer unsecured claim, added post-petition by amendment to schedules which had previously indicated there were no unsecured creditors. However, the Internal Revenue Service does not dispute that the Franchise Tax Board will have a claim in some amount unless the Service's claim is disallowed in its entirety. That claim will have the same priority status as the Service's deficiency claim, so far as the record discloses. If the total of the claims of both the Internal Revenue Service and the Franchise Tax Board exceed the assets available to satisfy them, there is some possibility that the debtors could subordinate part of the Service's claim to part or all of the claim of the Franchise Tax Board, which might not be possible outside of bankruptcy. The Service argued orally that it has a working agreement with the Franchise Tax Board that addresses allocation of assets in such circumstances. However, no competent evidence of such an agreement was proffered.

Consequently, it is not totally accurate to say that the instant case is purely a two party dispute, even though the claim of the third party, the Franchise Tax Board, is a derivative of whatever the allowed amount of the Service's claim is determined to be.

The third argument advanced by the Service is that the assets of the estate are being diminished by the debtors through the combined expenditures for the Chapter 11 proceedings, the prosecution of the appeal, and the expenses of maintaining the debtors and the non-monetary assets. The debtors wish to offer evidence that the monies made in the Goldman Sachs account have equalled or exceeded the estate's expenditures, so that no actual diminution has resulted. No eviden-

tiary hearing on that issue has been scheduled.

The facts are that the debtors have been provided with expense allowances drawn from the assets of the estate. Further, the professionals for the Chapter 11 estate are being compensated from the estate. And, the professionals handling the appeal of the Tax Court decision are being compensated from assets of the estate. Those facts, in themselves, are not dissimilar from some other Chapter 11 cases. But one central fact is different. The vast majority of the estate's assets are liquid in an investment account. Earnings are passive income not dependent upon a factory producing widgets or a company providing services to customers, thereby earning new revenues into the future.

Had the debtors not filed bankruptcy, the debtors would have had to post a bond to stay assessment and collection, or the Internal Revenue Service would have done both. The Internal Revenue Service would have levied on the investment account and whatever earnings those sums generated thereafter would have inured to the benefit of the judgment creditor. Instead, the debtors posted no bond, paid a Chapter 11 filing fee, and asserted the right to utilize the assets the Service otherwise would have seized to continue to pay the debtors own living expenses and, more significantly, to pay the expenses of prosecuting the appeal. If the debtors lose the appeal in substantial measure, they are unable to pay the judgment in full from present assets. Hence, there is no down-side to their pursuit of the appeal which, in effect, is being prosecuted using the funds the Service otherwise already would have seized. In practical effect, the Service is funding the appeal against itself while it is prevented from seizing those funds and while the debtor avoids the requirement of an appeal bond. Conversely, if the debtors prevail in substantial measure on appeal, they will be able to pay any resulting judgment and dismiss the bankruptcy case, with no permissible reorganization purpose having been served.

The Court is mindful that the debtors have proceeded with the Chapter 11 process, have obtained approval of a disclosure statement and solicited votes for their plan. Not surprisingly, the Internal Revenue Service has objected to confirmation on the same grounds raised in the instant motion. The Court is also mindful, however, that the debtors have periodically requested settlement conferences with the Internal Revenue Service, which has raised an inference that the bankruptcy process is being used to coerce a settlement of a judgment by 1) not having to post a bond on appeal, thereby delaying satisfaction of the judgment at reduced cost to the debtors; 2) holding the assets out of reach of the judgment creditor; and 3) utilizing assets which otherwise go toward satisfaction of the judgment to pay the debtors' own living expenses and the costs of prosecuting the appeal.

Reviewing the totality of the circumstances in this case, the Court is persuaded that the debtors' Chapter 11 petition was filed in bad faith and that dismissal of the case is warranted. Accordingly, the debtors' petition shall be, and hereby is dismissed.

IT IS SO ORDERED.